UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-588-JLS (RNBx)                    Date: June 30, 2015
Title:  Impac Funding Corporation et al. v. William D. Endresen et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:     ATTORNEYS PRESENT FOR DEFENDANT:
　　Not Present                                                    Not Present

**PROCEEDINGS:   (IN CHAMBERS) ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS (Doc. 44)**

Before the Court is a Motion to Dismiss filed by all Defendants in this case.[1] (Mot., Doc. 44.)  Plaintiffs Impac Funding Corporation, Integrated Real Estate Service Corp., Impac Mortgage Holdings, Inc., Impac Commercial Capital Corporation, and Impac Mortgage Corporation (together, "Impac") opposed, and Defendants replied. (Opp., Doc. 52; Reply, Doc. 55.)  Having read and considered the papers, the Court GRANTS the Motion as to Impac's RICO claims and DECLINES to exercise supplemental jurisdiction over the remaining state-law claims.

---

[1]  The Defendants are: William Endresen, Richard Davenport, Martin Marten, Rae Endresen, Terry Davenport, Melinda Marten, Chandler Endresen, Lauren Endresen, Deborah Wenzel, David Safir, Mariam Safir, O F Capital 1, LLC, Blue Lakes Capital, LLC, Briar Village, LLC, Cedar Avenue Apartments, LLC, Swiss Colony Apartment Complex, LLC, Excelsior Gardens, LLC, Flandrau Court Apartments, LLC, CLE Properties, LLC, Still-Red 10, LLC, The Endresen Family Trust, and The Richard Earl Davenport, Jr. and Terry Ann Davenport Joint Living Trust.

---

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-588-JLS (RNBx)                                          Date: June 30, 2015

Title:  Impac Funding Corporation et al. v. William D. Endresen et al.

## I.       **INTRODUCTION**

The Complaint alleges the following facts:

Impac is a residential mortgage lender.  In 2009, it created an "integrated services
platform to provide solutions to the mortgage and real estate markets as a result of the
disruption in the mortgage market." (Compl., Doc. 1, ¶41.)  This platform aimed to
mitigate losses to securitization trusts by, among other things, facilitating short sales.  (Id.
¶ 42.)  Specifically, Defendants William Endresen and Richard Davenport would identify
commercial or multi-family loans within the trusts that were delinquent or that appeared
likely to soon become delinquent.  (Id. ¶ 43.)  The borrower would then be given the
option of participating in a short sale in lieu of foreclosure.  (Id.)  The new buyer would
assume the original borrower's promissory note and mortgage, with the proceeds of the
short sale paying off some of the outstanding balance.  (Id.)  As part of this process,
Endresen and Davenport would negotiate a settlement with the original borrower for any
deficiency amount resulting from the short sale.  (Id.)  When an agreement was reached,
the original borrower would (1) make a cash deficiency payment or (2) sign an unsecured
promissory note called a Deficiency Note.  (Id.)  The original borrower would then be
released from further personal liability on the loan.  (Id.)  The cash payment would go to
the trust to help defray the loss from the short sale; Deficiency Notes could be held and
payments collected or sold on the open market, with proceeds from any sale also going to
the trust to defray its losses.  (Id.)

Endresen and Davenport served as President and Executive Vice President,
respectively, of Impac Commercial Capital Corporation, one of Impac's constituent
corporations, from 2002 through 2014.  (Id. ¶¶ 44-45.)  Each assented to Impac's
Employment Agreement and Code of Business and Ethics, which prohibit employees
from engaging in conflicts of interest or "taking for themselves personally opportunities
that are discovered through the use of corporate property, information or position without
the consent of the Board of Directors." (Id. ¶¶ 53-54.)  Impac alleges, however, that
Endresen and Davenport "hatched a plan to use their high-level positions at IMPAC, as
well as IMPAC's corporate information, property, and opportunities, to line their own,

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-588-JLS (RNBx)                          Date: June 30, 2015
Title:  Impac Funding Corporation et al. v. William D. Endresen et al.

their family members' and close friends' pockets to the detriment of IMPAC and the Trusts." (Id. ¶ 56.)  Impac alleges they did so in two ways.

First, Impac alleges Endresen and Davenport sold commercial properties secured by loans held by the trusts to themselves or their friends and family at "significantly less than fair market value" without disclosing the sales to Impac.  (Id. ¶ 60.)  Specifically, if a borrower elected a short sale, Endresen and Davenport would request an appraisal of the property at the trust's expense and would request rent rolls and operating statements from the borrower.  (Id ¶ 61.)  If Endresen and Davenport decided to purchase the property, Marten and other friends and family of Endresen and Davenport would establish an LLC.  (Id.)  Endresen and Davenport would then approve the sale of the property to the LLC on favorable terms.  (Id.)  For instance, the sale would be below fair market value, would require no down payment, would include a cash payment from the trust to the LLC for property rehabilitation, and would include modification of the subject loan such that the principal balance and interest rates were reduced, principal payments were eliminated for years, and no payments of any sort would be required for at least a year.  (Id.)  These terms were significantly better than the terms Impac could have obtained on the open market, and had Endresen and Davenport notified their superiors about the sales, Impac alleges it would not have approved them.  (Id.)  After the sale, ownership of the LLC's would shift to Endresen and Davenport.  (Id ¶ 62.)  Impac identifies nine specific properties that Endresen and Davenport acquired in this manner. (Id. ¶¶ 64-152.)

Second, Impac alleges Endresen and Davenport sold these Deficiency Notes to two LLCs they organized and owned and, although they were responsible for determining the best return on the Deficiency Notes for the trusts, bought "at least 19 of the Deficiency Notes for pennies on the dollar and for far less than their market value."  (Id ¶ 153.)  Specifically, Endresen and Davenport arranged the sale of 13 Deficiency Notes to O F Capital, LLC – which they owned – between February 2011 and February 2013.  (Id. ¶ 157.)  Endresen and Davenport then arranged the sale of six Deficiency Notes to Blue Lakes Capital, LLC.  (Id. ¶ 158.)  Impac alleges Endresen and Davenport did not disclose "all the material terms of the transactions" to Impac.  (Id. ¶ 156.)  Endresen and

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-588-JLS (RNBx)                              Date: June 30, 2015

Title:  Impac Funding Corporation et al. v. William D. Endresen et al.

Davenport paid roughly $178,000 for these nineteen Deficiency Notes, which were facially worth $2,251,825, and to date they have allegedly received more than $750,000 in payments on the Notes.  (Id. ¶ 161.)

On April 13, 2015, Impac filed its Complaint against Defendants for (1) violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c); (2) conspiracy to violate RICO; (3) breach of fiduciary duty; (4) aiding and abetting the breach of fiduciary duty; (5) fraud by intentional misrepresentation; (6) fraud by negligent misrepresentation; (7) fraud by deceit and suppression of fact; (8) conversion; (9) conspiracy; (10) constructive trust; (11) accounting; and (12) temporary restraining order, preliminary injunction, and permanent injunction.  (Compl. ¶¶ 168-287.)

Defendants now move to dismiss the Complaint in its entirety.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Furthermore, courts must draw all reasonable inferences in the light most favorable to the non-moving party.  *See Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  And while judicial review is generally limited to the face of a complaint, courts may properly consider "'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  *Harris v. Amgen, Inc.*, 738 F.3d 1026, 1035 (9th Cir. 2013) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  SACV 15-588-JLS (RNBx)                                    Date: June 30, 2015

Title:  Impac Funding Corporation et al. v. William D. Endresen et al.

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Thus, a complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).


### B.        Request for Judicial Notice


"Generally a court may not consider material beyond the complaint in ruling on a Rule 12(b)(6) motion." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).  "A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment," however, as long as the noticed facts are not "subject to reasonable dispute."  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).

Under Federal Rule of Evidence 201, a trial court must take judicial notice of facts "if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).  A fact is appropriate for judicial notice if it is not subject to reasonable dispute in that it is (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Facts contained in the public record are appropriate subjects of judicial notice. *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 (9th Cir. 2006).  Therefore, a court may take judicial notice of the existence of another court's opinion, *Cal. ex rel. RoNo, LLC v. Altus Fin. S.A.*, 344 F.3d 920, 931 (9th Cir. 2003), or of the filing of pleadings in related proceedings; the Court may not, however, accept as true the facts found or alleged in such documents.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-588-JLS (RNBx)                                Date: June 30, 2015

Title:  Impac Funding Corporation et al. v. William D. Endresen et al.

*Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003) (citing *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983)).

### III.    DISCUSSION

#### A.    Request for Judicial Notice

The Court first considers Defendants' request that the Court judicially notice (1) ten documents, totaling 2,777 pages, filed with the Securities Exchange Commission and retrieved by defense counsel from the SEC's website, and (2) 15 mortgage loan and purchase agreements submitted with Defendants William Endresen and Richard Davenport's declarations in opposition to Impac's application for a temporary restraining order.  (Request for Judicial Notice, Doc. 49, at 2-4.)

A federal court may properly take judicial notice of information "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

The Court first considers the SEC filings.  "Documents available through government agency websites are often considered appropriate for judicial notice as documents in the public record not reasonably subject to dispute." *Musgrave v. ICC/Marie Callender's Gourmet Products Div.*, No. 14-CV-02006, 2015 WL 510919, at *3 (N.D. Cal. Feb. 5, 2015) (collecting cases).  Here, however, Defendants seek to introduce the filings on the grounds that their contents purportedly show that Impac is not the real party in interest in these proceedings.  The filings are inadmissible for this purpose.  Judicial notice "is limited to the existence and authenticity of the documents rather than allowing notice of the truth of their contents." *Smith v. Nw. Tr. Servs., Inc.*, No. 13-3124, 2014 WL 2439791, at *3 (E.D. Wash. May 30, 2014).  Thus, while the SEC filings may be judicially noticeable, they are not judicially noticeable for the purpose urged by Defendants. *See Galvan v. City of La Habra*, No. 12-2103, 2014 WL 1370747, at *2 (C.D. Cal. Apr. 8, 2014) ("there is a distinction between whether the Court may

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-588-JLS (RNBx)                              Date: June 30, 2015

Title:  Impac Funding Corporation et al. v. William D. Endresen et al.

take judicial notice of a fact and whether that fact is admissible.")  In addition, the parties' disagreement as to which SEC filings should be judicially noticed belies Defendants' contention that these documents are "not subject to reasonable dispute."  *See Lee*, 250 F.3d at 690.

The Court also declines to judicially notice the mortgage loan and purchase agreements.  Defendants offer these documents to show Impac, through Impac Mortgage Holdings president William Ashmore, expressly approved many of the transactions at issue in this case.  Defendants offer no legal basis for the Court to judicially notice these documents, however, and given that Ashmore's alleged consent to the transactions is a central issue in this case, this is not the type of information that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  Accordingly, the Court will not depart from the general rule that it "may not consider material beyond the complaint" in ruling on a motion to dismiss. *Intri-Plex*, 499 F.3d at 1052.

Accordingly, Defendants' Request for Judicial Notice is DENIED, and the Court will assess the merits of Defendants' Motion without reference to these items.

### B.      Real Party in Interest

Defendants first seek dismissal of all claims on the basis that Impac is not the real party in interest in this case.  (Mot. at 9-10.)

Rule 17 provides, in relevant part, that "[a]n action must be prosecuted in the name of the real party in interest."  See Fed. R. Civ. P. 17(a)(1).  The real party in interest under Rule 17 is the party with the right to enforce a claim under the applicable substantive law.  *See U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1038 (9th Cir. 1986) ("[Rule 17] allows a federal court to entertain a suit at the instance of any party to whom the relevant substantive law grants a cause of action."); *Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 83 (4th Cir. 1973) ("The meaning and object of the real party in interest principle embodied in Rule 17 is that the action must be brought by a person who possesses the right to enforce the claim and who has a

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-588-JLS (RNBx)                               Date: June 30, 2015

Title:  Impac Funding Corporation et al. v. William D. Endresen et al.

significant interest in the litigation. Whether a plaintiff is entitled to enforce the asserted right is determined according to the substantive law.").

Defendants argue Impac is not the real party in interest because "where, as here, there has been a 'securitization' of a pool of mortgages, the real party in interest is the trustee of the trust, not the servicing agent." (Mot. at 9.)  As Impac notes, however, the cases cited by Defendants do not stand for this bright-line rule.  Rather, these and other cases make clear that the language of the underlying Pooling and Services Agreement determines the parties' rights and obligations.  *See LaSalle Bank Nat. Ass'n v. Lehman Bros. Holdings*, 237 F. Supp. 2d 618, 631-34 (D. Md. 2002); *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 180 F. Supp. 2d 465, 469-71 (S.D.N.Y. 2001); *see also CWCapital Asset Mgmt., LLC v. Chicago Props., LLC*, 610 F.3d 497, 501 (7th Cir. 2010).  Because the Court declines to judicially notice these documents at this stage in these proceedings, the Court DENIES Defendants' Motion on this basis.[2]

## C.      RICO and Conspiracy to Violate RICO Claims

Defendants next move to dismiss Impac's claim for violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c).

To state a claim under RICO, "a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  Private plaintiffs must also establish that they suffered an injury to business or property.  *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994) (citing 18 U.S.C. § 1964(c)).

---

[2]  Moreover, as IMPAC notes, Federal Rule of Civil Procedure 17 prohibits the Court from dismissing an action where the plaintiff is not the real party in interest "until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(c).  Thus, even if the Court *were* to make this finding, dismissal would not be warranted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-588-JLS (RNBx)                          Date: June 30, 2015
Title:  Impac Funding Corporation et al. v. William D. Endresen et al.

Defendants argue this claim fails because Impac (1) fails to allege a cognizable injury to business or property, (2) fails to allege racketeering activity by each Defendant, and (3) fails to allege a RICO conspiracy.  The Court first addresses the question of racketeering activity.

"Racketeering activity" is defined by 18 U.S.C. § 1961(1)(B) as any act "indictable" under various enumerated criminal statutes.  Impac argues Defendants' racketeering activity consisted of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.  (Compl. ¶¶ 202-205.)  The elements of both claims are (1) a scheme or artifice devised with (2) the specific intent to defraud and (3) use of the mail or interstate telephone wires in furtherance thereof.  *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1469 (9th Cir. 1987).  The acts underlying these claims must be alleged with specificity pursuant to Federal Rule of Civil Procedure 9(b).  *See Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).

Impac specifically identifies numerous emails sent between the Defendants as constituting wire fraud.  (*See* Compl. ¶¶ 16-667, 203-204; id. Exs. A-X.)  The Court agrees with Defendants, however, that these emails cannot be fairly read as furthering the alleged fraudulent scheme.  These emails evidence only Defendants' communications with each other regarding the day-to-day management of their newly acquired assets.  Because the alleged fraudulent scheme was the *sale* of those assets to Defendants without disclosure of all material terms, however, these communications between Defendants do not appear to further the fraudulent scheme in any relevant way.

In opposition, Impac argues the emails further the fraudulent scheme because it is "well-established that use of the wires need not be an 'essential element of the scheme' to defraud." (Opp. at 12.)  In *Schmuck*, on which Impac relies, the Supreme Court considered a scheme in which the defendant purchased used cars, rolled back their odometers, and then sold them to dealers for artificially inflated prices because of the low-mileage readings.  *Schmuck v. United States*, 489 U.S. 705, 707 (1989).  The unwitting car dealers then resold the cars to customers.  *Id.*  To complete the resale of each automobile, the dealer mailed a title-application form to the state department of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-588-JLS (RNBx)                                    Date: June 30, 2015

Title:  Impac Funding Corporation et al. v. William D. Endresen et al.

transportation on behalf of each retail buyer, which supplied the mailing element of each of the alleged mail frauds.  *Id*.  The defendant argued these mailings did not further the fraud and indeed, came "after the fraud ha[d] come to fruition."  *Id*. at 711.  The court rejected this argument, however, noting that the fraud was long standing and that the defendant's "relationships with the retail dealers naturally depended on the successful passage of title among the various parties.  Thus, although the registration-form mailings may not have contributed directly to the duping of either the retail dealers or the customers, they were necessary to the passage of title, which in turn was essential to the perpetuation of [the] scheme."  *Id*. at 712.

Here, by contrast, none of the emails cited by Impac appears to be critical, or even marginally helpful, to Defendants' successful long-term execution of the alleged fraudulent scheme.  Thus, they do not "further" the alleged fraudulent scheme within the meaning of the mail and wire fraud statutes.  *See* 18 U.S.C. §§ 1341, 1343.  Because Impac does not specifically identify any other communications as the basis of these claims, *see* Fed. R. Civ. P. 9(b), the Court agrees with Defendants that Impac fails to adequately allege the predicate acts of wire or mail fraud.

Accordingly, Defendants' Motion is GRANTED as to the RICO and conspiracy to violate RICO claims.[3]

###   D.      State-Law Claims

Having dismissed Impac's federal-law claims, the Court will not, in this Order, address Impac's state-law claims.  Only if Impac remedies the deficiencies in its federal-law claim will this Court exercise supplemental jurisdiction over the state law claims.  *Lacey v. Maricopa Cnty.*, 649 F.3d 1118, 1137 (9th Cir. 2011) ("[T]he district court retains discretion whether to exercise supplemental jurisdiction over state law claims even after all federal claims [have been] dismissed.") (citation omitted); *Carnegie-Mellon*

---

[3]  The parties agree in their briefing that the conspiracy to violate RICO claim rises and falls with the RICO claim.  (Mot. at 18-19; Opp. at 17.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-588-JLS (RNBx)                                         Date: June 30, 2015

Title:  Impac Funding Corporation et al. v. William D. Endresen et al.

*Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (citations omitted).

**IV.     CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' Motion as to Impac's RICO claims, which are DISMISSED WITHOUT PREJUDICE.  Impac is granted **21 days** to amend its Complaint in accordance with this Order.  Failure to do so will result in dismissal of this action without prejudice to refiling the remaining claims in state court.

Initials of Preparer:  tg